**ZAMPOS v. UNITED STATES SMELTING, REFINING AND MINING CO.**

**ANDERSON v. UNITED STATES SMELTING, REFINING AND MINING CO.**

**Nos. 4590, 4591.**

United States Court of Appeals
Tenth Circuit.

July 9, 1953.

172

H. G. Metos, Salt Lake City, Utah (Samuel Bernstein, Salt Lake City, Utah, on the brief), for appellants.

C. W. Wilkins, Salt Lake City, Utah (G. A. Marr, R. B. Holbrook and Richard H. Nebeker, Salt Lake City, Utah, on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

These actions were for the recovery of damages caused by a flood. In each case, it was alleged in the complaint that the defendant owned certain mining property in Bingham Canyon, Utah; that plaintiff owned certain property situated near such mining property; that defendant negligently stored water in the tunnels and drifts of its mining property; that it negligently allowed the stored water to sweep down upon the property of plaintiff; and that damage resulted. The defendant denied negligence. And it pleaded that the flood water was unusual, extraordinary, unprecedented, and not reasonably to be anticipated by an ordinarily prudent person; that such extraordinarily flow of water was the direct result of unusual and unprecedented climatic conditions; and that the proximate cause of the flood was an act of God. Defendant filed a motion in each case for summary judgment. Affidavits were attached to the motions and depositions were taken. The cases were consolidated for the purpose of a hearing upon the motions for summary judgment. Finding that there existed no genuine issue as to any material fact and that the defendant was entitled to judgment in its favor as a matter of law, such judgment was accordingly entered in each case. A motion was filed in each case to set aside the judgment and grant a trial of the cause. Affidavits were attached to the motion. Defendant filed countervailing affidavits, and plaintiff filed a reply affidavit. In each case, the motion to set aside the judgment was denied, and an appeal was seasonably perfected. For convenience, continued reference will be made to the parties as plaintiffs and defendant, respectively, rather than appellants and appellee.

Plaintiffs assert that there was a genuine issue of material fact upon which the outcome of the litigation depended, and that therefore it was error to enter summary judgments. Rule of Civil Procedure 56(c), 28 U.S.C., authorizes the entry of a summary judgment when it affirmatively appears from the pleadings, depositions, and admissions on file, together with the affidavits, if any, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment in his favor as a matter of law. The purpose of the rule is to provide against the vexation and delay which necessarily come from the formal trial of cases in which there is no substantial issue of fact. It is to permit the expeditious disposition of cases of that kind. But the procedure is not intended to be used as a substitute for a regular trial of cases in which there are disputed issues of fact upon which the outcome of the litigation depends. And it should be invoked with caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts. Associated Press v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 89 L.Ed. 2013. But if it affirmatively appears from the pleadings, admissions, depositions, and affidavits, if any, that there is no genuine issue as to any material fact upon which the outcome of the litigation depends, the case is appropriate for disposition by summary judgment and the court should enter such judgment. Broderick Wood Products Co. v. United States, 10 Cir., 195 F.2d 433.

In considering a motion for summary judgment, the court may pierce formal allegations and grant relief if it appears from uncontroverted facts set forth in affidavits, depositions, or admissions on file that as a matter of law there are no genuine issues for trial. Scheffler v. Bowles, 10 Cir., 153 F.2d 1, certiorari denied, 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640; Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568; New York Life Insurance Co. v. Cooper, 10 Cir., 167 F.2d 651, certiorari denied, 335 U.S. 819, 69 S.Ct. 41, 93 L.Ed. 374. And flimsy allegations which are transparently not well

founded in fact are insufficient to state a justiciable controversy requiring the submission thereof for trial. Sabin v. Home Owners' Loan Corp., 10 Cir., 151 F.2d 541, certiorari denied, 328 U.S. 840, 66 S.Ct. 1011, 90 L.Ed. 1615.

On a motion for summary judgment, the burden rests upon the moving litigant to show that there is no genuine issue in respect to any material fact and that he is entitled to judgment in his favor as a matter of law. Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 3 Cir., 190 F.2d 817; Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881. All substantial doubts are to be resolved against him, and his supporting affidavits and depositions, if any, are to be carefully scrutinized. Hoffman v. Partridge, 84 U.S. App.D.C. 224, 172 F.2d 275. A supporting affidavit must present evidence which is admissible and must not only be made on the personal knowledge of the affiant but must show that he possesses the knowledge asserted. Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318. And where it appears from the whole case, including the affidavits and depositions, if any, submitted in support of the motion, that there is a genuine issue respecting a material fact, the opposite party need not file counter affidavits. Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 179 F.2d 265. But where the moving party presents affidavits, or depositions, or both, which taken alone would entitle him to a directed verdict, if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence that he can adduce which may reasonably change the result. Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715; Gifford v. Travelers Protective Association, 9 Cir., 153 F.2d 209.

By affidavits which were in no manner discredited as dishonest, defendant showed these facts in each case upon the hearing on the motion for summary judgment. The flood in question occurred in Bingham Canyon, near Bingham City, Utah, in April, 1952, when a large deluge of water suddenly gushed from the portal of the mine. Mining operations had been carried on in the Bingham Canyon area for 89 years. There were more than 600 miles of underground tunnels, drifts, winzes, raises, shafts, and other openings in the area. There were hundreds of abandoned tunnels and openings. And after operations were abandoned in such tunnels, it was not the practice to maintain them or to seal their portals except to erect gates to prevent trespassing. The portal of the mine in question was located about fifty feet above the bottom of Bingham Canyon. The tunnel was begun in the year 1910. By 1920, it extended to a total length of 8,350 feet. And tributary to the tunnel, there were 9,810 feet of development workings which consisted primarily of drifts, raises, and winzes. The last work in the tunnel was done in 1924. In 1929, the defendant acquired by ownership of stock an interest in the property; and in 1950, it acquired title to the property. It was after the tunnel had been completed and after work in the mine ceased that defendant first acquired an interest in the property. During the twenty-eight years intermediate the termination of operations in the mine and the flood, a stream of water estimated at from 35 to 40 gallons per minute in the fall of the year and from 50 to 75 gallons per minute in the spring flowed out of the tunnel. This water flowed in a small ditch along the side of the tunnel to the portal and was then appropriately diverted into the sewer system of the City of Bingham. During that entire time, the flow was fairly constant. It did not stop, fluctuate substantially, or otherwise give warning that water was accumulating or becoming impounded underground. Defendant did not store or impound water anywhere within its mining property; and it did not have knowledge or notice that water was accumulating or being impounded therein. During the winter preceding the flood, there was an extraordinary amount of sleet, snow, and ice on the ground in the area surrounding Bingham Canyon; and for a short time immediately preceding the flood, temperatures were unusually high for that time of the year. The mountains in the Bingham Mining District are virtually denuded of vege-

tation cover. And in that area, the horizontal sedimentary strata as originally laid down have been uplifted and tilted, reaching in some places almost to a vertical position. Following that, igneous intrusions in the form of stocks, dikes, and sills occurred. These upheavals and later readjustments resulted in movements on the planes of strata which open up in places. Such action made considerable loose breccia, sometimes referred to as explosion pipes, over a large area. And all of such movement resulted in the formation of extensive subterranean channels. The only means of entering the underground workings tributary to the tunnel was through the tunnel itself. In 1941, in 1949, and again shortly after the flood, inspection of the tunnel was attempted but it was found to be impossible. Due to asmospheric conditions, it was impossible to penetrate far inside the entrance even with the most modern mine rescue breathing apparatus. After the flood, the defendant constructed a concrete plug about 175 feet from the portal of the tunnel for the purpose of preventing another like occurrence. No similar flood had previously occurred. For the purpose of countervailing the facts thus shown by the defendant, plaintiffs offered the joint affidavit of two meteorologists. It related in general language to floods from natural causes being due to temporary unbalances created by excessive rainfall or snowmelt beyond the absorptive capacity of the ground; to the behavior of water in respect to percolating through the ground under action of gravity; to weather reports and records; and to contour maps of the Bingham area. The affidavit failed to indicate that either of the affiants was familiar with the mining property in question. Without disclosing any personal knowledge of conditions obtaining prior to and at the time of the flood, the affiants gave it as their opinion that the flow from the tunnel of the magnitude described in the affidavits offered by defendants was not the result of a natural flow of ground water into the tunnel within a short time preceding the flood, but was probably caused by a sudden release of water stored underground over

a long period of time. Plaintiffs also offered the affidavit of one of their attorneys. But it merely detailed statements made to the affiant by a person who saw the flood. It was nothing more than hearsay. And the hearsay evidence detailed in the affidavit related primarily to the suddenness of the flood and the extent of the flood water coming from the portal of the mine. It threw no light upon the source from which the flood water came. True, according to the affidavit, the person who witnessed the flood stated to the affiant that the snow and precipitation existing at that period of time had nothing to do with the flood water, and that such water came out of the tunnel as a result of the accumulation of water therein for a long period of time. But it is clear that those statements were mere conclusions of a layman and they had no probative force whatever. No person making an affidavit or giving a deposition for either plaintiffs or defendant purported to know the origin of the flood water. No person making an affidavit or giving a deposition pretended to have any knowledge or information indicating that the water had accumulated or become impounded in the underground mining property of defendant. And there was no suggestion that like floods had ever occurred elsewhere in the Bingham Canyon area. After referring to the fact that since the flood the tunnel had been cemented in and closed, attorneys for plaintiff stated in their brief filed in this court "Knowledge of the cause of the flood was and is accessible to the appellee but inaccessible to appellants." And in the course of oral argument, counsel for plaintiffs impliedly conceded, if not expressly so, that plaintiffs did not have any evidence tending to show affirmatively the place at which water accumulated or became impounded, or the source from which it came. If the cases had been tried to the court or a jury and evidence had been introduced tending to establish all of the facts set forth in all of the affidavits and depositions, the cause or contributing causes of the flood, or the source from which the flood water came, would have been solely a matter of speculation or conjecture. No gen-

uine issue of fact existed between the parties in respect to acts or conduct, either affirmative or negative, on the part of the defendant as the proximate cause or a proximate cause of the flood. And in the absence of a genuine issue of material fact in respect to that essential element in the case, the action of the court in entering summary judgments rather than letting the case go to trial is not open to the challenge presently directed against it.

 Apparently aware of their lack of evidence tending to establish negligence on the part of the defendant as the proximate cause of the flood, plaintiffs seek to invoke the legal doctrine sometimes referred to as the rule of absolute liability and sometimes called the rule of liability without fault. The essence of the rule of liability without fault is that if a person in the conduct or maintenance of an enterprise which is lawful and proper in itself deliberately does an act under known conditions and with knowledge that injury will in all probability result to another and injury is sustained by the other as the direct and proximate consequence of the act, the person doing the act and causing the injury is liable in damages even though he acted without negligence. Under the doctrine, liability rests not upon negligence but upon the intentional doing of that which the person knows or should in the exercise of ordinary care know may in the normal course of events reasonably cause loss to another. Liability is automatically imposed upon the tortfeasor when damages are sustained by another under such circumstances, even though there was no negligence. One well recognized phase of the doctrine is that where a person for his own purposes brings or collects on his land or permits to accumulate there something which is likely to cause injury to others if it escapes acts at his peril. If it escapes and causes injury to other he is answerable in damages for the natural consequences. And that segment of the general doctrine includes the accumulation of water on premises under circumstances which make its escape a matter of reasonable contemplation. That particular feature of the general doctrine was enunciated in the leading English case of Fletcher v. Rylands, L.R. 1, Exch. 265. There, the defendants constructed a reservoir on land separated from plaintiff's colliery by intervening land. Mines under the site of the reservoir and under part of the intervening land had been worked, and plaintiff had by workings lawfully made in his colliery and in the intervening land opened underground communication between his colliery and the old workings under the reservoir. It was not known to the defendants or to any person employed by them in the construction of the reservoir that such communication existed, or that there were any old workings under the site of the reservoir. And the defendants were not guilty of negligence. But the reservoir was constructed over five old shafts leading down to the workings. And when the reservoir was filled, water burst down the shafts and flowed by the underground communication to plaintiff's mine. Damage resulted and defendants were held liable. The general rule enunciated in that case was inferentially recognized in Utah, though it was expressly withheld from application to water in irrigation ditches and canals. Mackay v. Breeze, 72 Utah 305, 269 P. 1026.

 But the rule of liability without fault has no appropriate application here for the reason that the defendant did not bring water onto or into its property and store it there. It did not knowingly permit water to accumulate or become stored there. And it did nothing to encourage or contribute to water becoming pent-up there. It did not know, and in the exercise of ordinary care it was not required to know, that a large body of water was stored, accumulated, or pent-up within such property. And it did not appear as a fact that the water actually accumulated or became stored there. It may have accumulated on or within adjoining or adjacent property of another and suddenly broke through into the property of the defendant. Or, it may otherwise have found its way into the tunnel and thence to the portal of the mining property of defendant. And in the absence of any affirmative showing that the defend-

ant stored water on its property, or that it knowingly permitted water to accumulate there, or that water did accumulate or become pent-up there and by the exercise of ordinary care the defendant would have known such fact, there is no basis in law upon which to require the defendant to respond in damages under the rule of liability without fault.

Plaintiffs also rely upon the rule of res ipsa loquitur. It is the law in Utah that in order for a plaintiff to prevail upon the doctrine of res ipsa loquitur he must show that the thing or instrumentality which caused the injury was in the exclusive custody and control of the defendant; that the accident or occurrence was of a character which ordinarily does not occur in the absence of negligence; and that when these facts are shown the evidence is sufficient to warrant an inference that the defendant did not exercise due care. Zoccolillo v. Oregon Short Line Railroad Co., 53 Utah 39, 177 P. 201; Angerman Co. v. Edgemon, 76 Utah 394, 290 P. 169, 79 A.L.R. 40. The inference arises in part from the fact that the happening was such that it would not be likely to occur unless someone was negligent. White v. Pinney, 99 Utah 484, 108 P.2d 249. And if the circumstances are equally consistent with a cause which would not be attributable to negligence, the doctrine does not apply. Jenson v. S. H. Kress & Co., 87 Utah 434, 49 P.2d 958. The mining property in question was in the exclusive custody and control of the defendant. But there was a complete absence of any showing that the flood was of a character which ordinarily does not occur in the absence of negligence. The circumstances disclosed were equally consistent with a cause not attributable to negligence on the part of the defendant. The facts were not sufficient to sustain an inference that the defendant was negligent either in storing the water on its premises or knowingly permitting it to accumulate there, or that it accumulated there under circumstances with which the defendant in the exercise of ordinary care should have been familiar.

The judgments are severally affirmed.