UNITED STATES of America,
Appellant,

v.

KANSAS GAS AND ELECTRIC COM-
PANY, a corporation, Appellee.

No. 6420.

United States Court of Appeals
Tenth Circuit.

Feb. 3, 1961.

Ronald A. Jacks, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Wilbur G. Leonard, U. S. Atty., Topeka, Kan., and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellant.

Stanley Garrity, Wichita, Kan., for appellee.

Before MURRAH, Chief Judge, and BRATTON and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The United States, plaintiff below, appeals from a summary judgment in favor of appellee-defendant, Kansas Gas & Electric Company (herein referred to as the Utility), to recover alleged overpayments made under a contract for the sale by the Utility of electrical energy for use on the Planeview federal housing project located near Wichita, Kansas. The claim of overcharge involves the years 1947–1952 and depends on the applicability of a rate schedule adopted by the Utility in 1947. The parties agree that if such rate schedule is applicable

the amount of the overcharge is $62,-468.75.

The contract required the Utility to deliver electricity to a designated point where it was metered for billing purposes. Beyond that point the Housing Authority distributed the electricity to the users and included the charge therefor in the rent as an incident of tenancy. The dispute arises over the interpretation and application of the following provision of the contract:

"If during the period of this contract, the Utility makes general reductions in rates or if lower rates are made applicable to this general class of service, then such reductions shall be applicable to the rates for the service covered by this contract."

There was no general reduction in rates. The query is whether there was a rate reduction applicable to the "general class of service." The record shows that at the time of the execution of the contract the Utility had in effect a schedule, designated as PW–337, applicable to "electric service for redistribution and resale by municipalities owning and operating a local distribution system." In the fall of 1942 the Utility adopted a schedule, designated as PW–942, which cancelled PW–337 and applied to "all electric service supplied for resale to municipalities whose entire requirements are supplied under this Schedule at one metering point." The Utility offered to apply PW–942 to the Planeview project but the offer was rejected as a study disclosed that it would not result in a reduced rate. In 1947 the Utility adopted schedule PWM–247 which cancelled PW–942 and applied to "all electric service

supplied under Company's standard 'Agreement for Electric Service' to Public Utilities for Resale." The Government contends that this last schedule reduced the rates and the failure of the Utility to apply it resulted in the claimed overcharges. The Utility says that the PWM–247 schedule does not apply as it does not relate to the same "general class of service" as that provided for in the contract under consideration.

The sole question is whether there is a factual dispute which precludes summary judgment. In their reply brief Government counsel, with commendable candor, say that they do not now ask for judgment on the merits "for the record at this point does not contain all the facts necessary for such a determination."

■ No good purpose would be served by reviewing the numerous decisions of this court dealing with summary judgment.[1] The Utility recognizes that summary judgment is not proper when there is a genuine issue of material fact and, in saying that there is no such issue here, relies heavily on the fact that the trial court had before it the contract in issue and a typical contract with a municipality which was governed by schedule PWM–247 and that its affidavits submitted in support of its summary judgment motion were not controverted by counter affidavits. The Government contends that its pleadings, answers to requests for admissions, and answers to interrogatories, when considered together with the pleadings and affidavits of the Utility, establish a factual situation which precludes summary judgment.

■ The failure of the Government to file counter affidavits is not controlling.[2] A summary judgment proceeding

1. E. g. Schreffler v. Bowles, 10 Cir., 153 F.2d 1, certiorari denied 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640; Avrick v. Rockmont Envelope Co., 10 Cir., 155 F. 2d 568; New York Life Ins. Co. v. Cooper, 10 Cir., 167 F.2d 651, certiorari denied 335 U.S. 819, 69 S.Ct. 41, 93 L. Ed. 374; Broderick Wood Products Co. v. United States, 10 Cir., 195 F.2d 433; Zampos v. United States Smelting, Re-

fining & Mining Co., 10 Cir., 206 F.2d 171; Hunt v. Pick, 10 Cir., 240 F.2d 782; Champlin v. Oklahoma Furniture Manufacturing Company, 10 Cir., 269 F. 2d 918; and Lopez v. Denver & Rio Grande Western Railroad Company, 10 Cir., 277 F.2d 830.

2. Zampos v. United States Smelting, Refining & Mining Company, supra, 206 F. 2d at page 174.

is not a trial by affidavit.[3] The parties must always be afforded a trial when there is a good faith dispute over the facts.[4] Rule 56, F.R.Civ.P., 28 U.S.C.A., requires, in the determination of the existence of such a dispute, consideration of the pleadings, depositions, admissions on file and affidavits, if any. Answers to interrogatories may also be properly considered.[5] While the pleadings are to be construed liberally in favor of the party against whom the motion is granted,[6] "flimsy or transparent" allegations in pleadings are insufficient to raise a factual issue.[7]

The complaint alleged that:

"At the time of execution of said contract, the general class of electrical service that defendant agreed to furnish to plaintiff thereunder was also being furnished by the defendant to public utilities and municipalities owning and operating local distribution systems in territory served by the defendant, according to the provisions of a certain rate schedule designated as PW–337."

In answering interrogatories propounded by the Utility, the Government asserted several acts of the Utility which allegedly indicated that the Utility considered the service furnished the Planeview housing project as within the same "general class of service" as that supplied by the Utility to municipalities. These acts included: offer of service at PW–337 rates; service at PW–337 rates; use of PW–337 rate tables; the stamping of bills to the Government with the notation "PW–337"; the offer to the Government of the PW–942·rate which superseded the PW–337 rate; and the reports by the Utility to the Federal Power Commission that the sales of electricity to the Planeview project were made under "Rate Schedule PW–337, Mun. Resale Service." These are substantial statements of material facts going to the intent of the parties in the use of the phrase "general class of service" in the contract. They may not be brushed aside as frivolous.

The Utility relies on three affidavits. These contain the following pertinent statements. The Government requested a "wholesale rate on a master meter basis" and the Utility had no applicable general rate schedule. The rate set out in the contract was "a special rate, based on special and unusual circumstances." The contract was filed with and approved by the State Corporation Commission of Kansas as a special contract rather than a "general rate schedule." The rate schedules applicable to municipalities do not apply to federal housing projects because the municipal schedules are for metered resale and the housing contracts expressly prohibit resale.[8] The Utility is required to comply with the accounting procedures of the Federal Power Commission and reported the contract sales in question under the account entitled "Other Sales to Public Authorities" whereas the municipal sales under schedules PW–337, PW–942, and PWM–247 were reported under the account "Sales to Other Electric Utilities." Schedule PW–337 was used in the billing of sales to the Government only because the block

3. Champlin v. Oklahoma Furniture Manufacturing Company, supra, 269 F.2d at page 922.

4. Associated Press v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 89 L.Ed. 2013, rehearing denied 326 U.S. 802, 66 S.Ct. 6, 90 L.Ed. 489.

5. Champlin v. Oklahoma Furniture Manufacturing Company, supra, 269 F.2d at page 920.

6. Alaniz v. United States, 10 Cir., 257 F.2d 108, 110.

7. Sabin v. Home Owners' Loan Corporation, 10 Cir., 151 F.2d 541, 542, certiorari denied 328 U.S. 840, 66 S.Ct. 1011, 90 L.Ed. 1615, motion for leave to file second petition for rehearing denied 330 U.S. 856, 67 S.Ct. 1076, 91 L.Ed. 1297.

8. The Government distributed the electricity to those on the housing project through its own lines but did not meter the electricity or charge separately for it. The cost of the electricity was included in the rental charge for each unit.

rate in the Planeview contract was the same as that in PW–337.

The trial court accepted the Utility's affidavits as stating the "true and undisputed facts of the case," held that the contract in question was "a special contract for a special purpose," observed that the general rate schedules were not applicable because the electricity "furnished the housing projects was not for resale," and found support in the classification of the contract by the Kansas Corporation Commission as a "special contract." This approach and the conclusion reached ignore the statements of the Government in its complaint, answers to requests for admissions and answers to interrogatories, and apparently are predicated on the premise that there is no uncertainty or ambiguity in the contract reference to "general class of service."

The essence of the Utility's affidavits and arguments and of the lower court's decision is that we have here a special contract providing for a special rate and, hence, no general rate schedule applies. This approach avoids the real issue. The contract gives the Government the benefit of rate reductions "applicable to this general class of service." Neither unilateral filings by the Utility with the Kansas Corporation Commission and with the Federal Power Commission nor ex parte classification of the contract by the Kansas Commission as a special contract is decisive of the issue. The query is what did the parties intend by the quoted phrase.

The service furnished by the Utility was the delivery of electricity to a designated point where the quantities were measured for billing purposes. Beyond that point the electricity was distributed by the housing authority. The Government contends that this is the same general class of service as is furnished by the Utility to certain municipalities and that the parties so intended. The Utility says that the contracted service is not within the general class of municipal service because of the different provisions for resale and because of technical differences relating to limitations on use, delivery voltage, minimum kilowatt and minimum charge provisions, billing, and rights of the Utility upon nonpayment of charges.

The controlling phrase is not defined in the contract and its meaning cannot be drawn from the four corners of that instrument. While the words employed are words of common usage, as used in the contract they do not have a definite meaning to a reasonably intelligent person unacquainted with the operative usages and unfamiliar with the circumstances attending the making of the contract.[9] The lower court reached its conclusion as to meaning after comparing the contract with a municipal contract of the Utility and after considering the affidavits of the Utility. In so doing it ignored the assertions of the Government as to operative usage and attendant circumstances. There should have been a full inquiry and proper evaluation of the facts relied on by each party.[10] In the circumstances presented the question of intent is of paramount importance and that question is usually one of fact.[11] The record shows a good faith dispute on this material fact. It follows that summary judgment was not proper.

As the case must be sent back for trial on the merits, we point out that although a pre-trial conference was held there was no order entered under Rule 16, F.R.Civ. P., defining and limiting the issues. We suggest that this is the type of case in which the entry of such an order is essential to the proper disposition of the controversy.

9. Cf. Restatement of the Law, Contracts, § 230 (1932).

10. Evensen v. Pubco Petroleum Corporation, 10 Cir., 274 F.2d 866, 872.

11. Majors & Son, Inc. v. Lippert Bros., Inc., 10 Cir., 263 F.2d 650, 654.

Reversed and remanded for further proceedings in harmony with the views herein expressed.

BRATTON, Circuit Judge (concurring in part and dissenting in part).

I concur in the reversal of the judgment but I think the cause should be remanded with directions to enter judgment for the United States—not remanded for trial.

The crucial provision in the contract (quoted in the opinion of the majority) is one of the type sometimes referred to as a "most favored nations" provision. Under the contract, Utility was to sell and did sell to the United States, a governmental entity, large quantities of electric energy for resale and distribution in a federal housing project. By different transactions, Utility also sold to various cities and towns, governmental entities, large quantities of electric energy for resale and distribution within such municipalities. During the life of the contract with the United States, some of the sales made to cities and towns were at lower rates than those fixed in the contract. But Utility continued to bill the United States at the rates fixed in the contract and payment was made accordingly.

It is my view that the sales to the United States for resale and distribution within the housing project, and the sales made to the cities and towns for resale and distribution within such municipalities, bore sufficient similarity in essence and substance to entitle the United States under the contract to rates at the same level as the lowest rates given to any city or town. If so, the United States is entitled to recover the difference between the amount paid and the less amount which it should have paid. And the facts relating to the sales made to the United States, the facts relating to the amount which the United States paid, and the facts relating to the rates at which sales of energy were made to cities and towns during the life of the contract, were not in controversy. In these circumstances, there is no need for a trial. Instead, the case is ripe for judgment in favor of the United States for the amount of the overpayment.