Lavelle STEVENS, Administratrix of the Estate of Robert Wayne Stevens, Deceased, Plaintiff-Appellant,

v.

James A. BARNARD, III, d/b/a Mid-Continent Bellanca, Defendant-Appellee.

No. 74–1434.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 21, 1975.

Decided March 21, 1975.

Earl P. Enos, Duncan, Okl. (Paul F. Fernald, Oklahoma City, Okl., on the brief) for appellant.

Michael C. Stewart, Oklahoma City, Okl., for James A. Barnard, III, d/b/a Mid-Continent Bellanca, appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Lavelle Stevens (Stevens) as administratrix of the estate of the decedent, Robert Wayne Stevens, (Robert) appeals from an Order of the Trial Court granting Summary Judgment to the defendant-appellee James A. Barnard III, d/b/a Mid-Continent Ballanca (Mid-Continent).[1]

The facts in summary are: Robert was killed in the crash of an aircraft he was piloting on June 17, 1971, at Halliburton Field, Duncan, Oklahoma; the plane was a Piper PA–24 235 manufactured March 17, 1964, and was used as an agricultural spray plane; the appellee was at the time an individual engaged in the business of servicing airplanes for hire in Duncan, Oklahoma; immediately prior to the crash, the aircraft had undergone extensive repairs including refabrication of the wings at Mid-Continent's facilities and had been certified "airworthy" by one Lauron J. Chesley, authorized by the F.A.A. to perform inspections;[2] when work on the plane was finished, Robert agreed to test-fly it; it was noted during the pre-flight inspection that the left door was not on the aircraft and Robert insisted that it be installed even though he apparently knew that one of the door's two hinges was broken and that a new door had been ordered; Robert assisted employees of Mid-Continent in the installation of the defective door; after take-off, observers testified that Robert first did a series of "dutch rolls" presumably to test the plane's aileron controls while the plane was approximately 50 feet off the ground; the plane momentarily continued a normal gradual climb then suddenly went into a vertical climb to an estimated height of 250 to 300 feet, at which point it went into what was described as a "hammerhead stall", fell off to the right and crashed to the ground, nose down; a day after the crash the left door to the plane was found by one Earl McCloud some several hundred feet from the crash site; F.A.A. Inspector Chennault found all control cables on the plane to be intact except for one which had apparently snapped upon impact; Robert was an experienced, safe pilot in good health on the date of the accident.

In her complaint, Stevens alleged: (1) that it was negligence on the part of Mid-Continent to certify the aircraft to be "airworthy" when in fact the plane was unsafe to fly due to the missing left door hinge; (2) that Mid-Continent failed to comply with applicable methods of inspection and repair; and (3) that the doctrine of res ipsa loquitur was applicable under these circumstances.

---

1. Defendant Piper Aircraft Corporation was dismissed from the case subsequent to a settlement agreement.

2. The parties are in dispute as to whether Chesley was an agent of Mid-Continent in his function as an authorized inspector.

Based upon the pleadings, depositions and affidavits offered by the parties, the district court for the Western District of Oklahoma found that there existed no genuine issue as to any material fact and granted Mid-Continent's motion for summary judgment.

## 1. NEGLIGENCE

■ In assessing motions for summary judgment, we recognize that appellate courts must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 494 F.2d 168 (10th Cir. 1974); James v. Atchison, Topeka and Santa Fe Railway Company, 464 F.2d 173 (10th Cir. 1972). Pleadings and other documentary evidence are to be construed liberally in favor of the party opposing such a motion. Harman v. Diversified Medical Investments Corporation, 488 F.2d 111 (10th Cir. 1973); Shawver & Son, Inc. v. Oklahoma Gas & Electric Company, 463 F.2d 204 (10th Cir. 1972); Building Mart, Inc. v. Allison Steel Manufacturing Co., 380 F.2d 196 (10th Cir. 1967). The moving party must demonstrate entitlement beyond reasonable doubt and if an inference can be deduced from the facts whereby the non-movant might recover, summary judgment is inappropriate. Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra; James v. Atchison, Topeka and Santa Fe Railway Company, supra.

■ Notwithstanding the difficult legal hurdles confronting a party moving for summary judgment, we have held that when the motion is supported by depositions and affidavits, the party opposing it may not rest upon the mere allegations of his pleadings, but must respond with *specific facts* showing the existence of a genuine issue for trial. Brown v. Ford Motor Company, 494 F.2d 418 (10th Cir. 1974); Gates v. Ford Motor Company, 494 F.2d 458 (10th Cir. 1974); Rule 56(e) Fed.R.Civ.P., 28 U.S.C. The party opposing the motion may rest upon his pleadings only where it appears that the affidavits and depositions of the movant, standing alone, would not entitle the movant to a directed verdict. Riggs v. British Commonwealth Corporation, 459 F.2d 449 (10th Cir. 1972); Zampos v. United States Smelting, Refining and Mining Co., 206 F.2d 171 (10th Cir. 1953).

Stevens alleges in her complaint that the specific acts of Mid-Continent, or its employees which here constituted negligence were: allowing Robert to test-fly the plane when it was in fact unsafe due to the defective left door; failing to warn Robert that this condition rendered the plane unsafe; and failing in other specific ways to follow applicable inspection and repair methods.[3]

■ To recover under a theory of negligence, however, Stevens must necessarily present evidence that the negligent acts or omissions complained of were the *proximate cause* of Robert's death. The record before us demonstrates that no material issue exists in this regard. In Zampos v. United States Smelting, Refining and Mining Co., *supra,* we held:

> If the cases had been tried to the court or a jury and evidence had been introduced tending to establish all of the facts set forth in all of the affidavits and depositions, the cause . . . of the flood . . . would have been *solely a matter of speculation or conjecture.* No genuine issue of fact existed . . . in respect to the acts or conduct . . . on the part of the defendant as the proximate

---

**3.** In her reply brief Stevens specifically alleges:

. . . standards require ten or twelve coats of Butyl, [Chesley] only applied two or three; standards require perforating the gommets in the leading edge of the wing and [Chesley] did not perforate any of the gommets to permit draining; standards and manufacture's (sic) specifications for this airplane required the fairings to be in place around the ailerons and they were not; standards required the frame and longerons to be sand blasted and chromed, and although Chesley testified he did this it was not true . . . .

cause or a proximate cause of the flood. *And in the absence of a genuine issue of material fact in respect to that essential element* in the case, the action of the court in entering summary judgments rather than letting the case go to trial is not open to the challenge presently directed against it. (Emphasis added).

206 F.2d 171 at 175–76.

■ Stevens' bald allegation that the presence of this defective door or the occurrence of the other alleged acts or omissions on the part of the appellee constituted the proximate cause of the accident can rise, under the circumstances presented here, no higher than a potential issue.[4]

■ Assuming, arguendo, that Stevens could establish that the left door of the plane came off during flight and not upon impact,[5] her only "evidence" that the absence of such door could have contributed to the crash was a statement to this effect made by her attorney.[6] We have held that generalized, conclusionary, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment. Citizens Environmental Council v. Volpe, 484 F.2d 870 (10th Cir. 1973), cert. denied 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286. Stevens has not presented any evidence that the other acts or omissions complained of were the proximate cause of this fatal crash.

While we agree with Stevens' contention that causation is generally a jury question, we find inapposite those negli-

gence cases (as opposed to strict liability cases) cited by her for the proposition that summary judgment is precluded where the party opposing the motion has demonstrated the existence of an alleged defect coupled with a permissible *inference* of causation. In each of those cases there existed strong evidence, lacking here, that the alleged defect in fact *cause the accident.*[7]

In regard to Stevens' allegations under a theory of negligence, we hold that the Trial Court, after a review of the affidavits, depositions, and other evidence before it, could have directed a verdict in favor of the appellee. Accordingly, the order of summary judgment was appropriate.

## 2. RES IPSA LOQUITUR

Perhaps aware of her lack of evidence tending to establish negligence on the part of appellee as the proximate cause of the accident, Stevens seeks to invoke the legal doctrine of res ipsa loquitur. In so doing she alleges: (1) that prior to this accident the plane was in the exclusive control of Mid-Continent or its employees; (2) that Robert was a careful pilot and that this fact eliminates any possible causation for the accident other than the negligence of appellee; and (3) that ordinarily a fatal airplane crash is not an "event" which occurs without negligence.

In holding that the doctrine was not applicable, the Trial Court quoted the Oklahoma law stated in National Union Fire Insurance Company v. Elliott, 298 P.2d 448 (Okl.1956):

---

4. In Zampos v. United States Smelting, Refining and Mining Co., *supra,* we stated: " . . . flimsy allegations which are transparently not well founded in fact are insufficient to state a justiciable controversy requiring the submission thereof for trial." 206 F.2d 171 at 173–74.

5. Such an inference is not clear from the facts established. While the left door was found some distance from the wreckage, the crash site was not secured between the time of the accident and this "discovery" made the following day. Furthermore, the only testimony, via deposition, that someone had seen

this door fall from the plane was in the form of inadmissible hearsay.

6. Attorney for Stevens stated in his affidavit:
   "6. Other witnesses will testify that the door coming loose in flight could cause a crash." (TR., Vol. I, p. 260).

7. The only evidence in the record before us as to whether the absence of this door could have caused the crash was the deposition of F.A.A. Inspector Chennault who stated that normally this type of aircraft is operated without doors except during winter months. (TR., Vol. IV, p. 33).

. . . while there is conflict in the decisions relative to the application of that doctrine there is no dispute relative to the meaning of the words res ipsa loquitur. They simply mean "the thing speaks for itself." And that means the *thing* or *instrumentality* involved speaks for itself. It clearly does not mean the *accident* speaks for itself. It means that when the initial fact, namely what thing or instrumentality caused the accident has been shown then, and not before, an inference arises that the injury or damage occurred by reason of the negligence of the party who had it under his exclusive control. The inference of negligence arising from the initially established fact compels the defendant, in order to relieve himself of liability, to move forward with his proof to rebut the inference of negligence.

298 P.2d 448 at 451.

The Trial Judge, under this rule, concluded that Stevens, having failed to establish the particular cause of the accident, could not rely upon the benefit of the res ipsa loquitur doctrine.

■ The views of a federal district judge, who is a resident of the state where the controversy arose in a case involving interpretations of the law of that state, carry extraordinary persuasive force on appeal where there are no state decisions on point or none which provide a clear precedent. United States v. Wyoming National Bank of Casper, 505 F.2d 1064 (10th Cir. 1974) (the absence of a controlling state decision); Hardy Salt Company v. Southern Pacific Transportation Company, 501 F.2d 1156 (10th Cir. 1974) (unsettled peripheral questions of state law); Casper v. Neubert, 489 F.2d 543 (10th Cir. 1973) (on unsettled law in his state); Stafos v. Jarvis, 477 F.2d 369 (10th Cir. 1973), cert. denied 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973) (not aided in its consideration by either administrative interpretation or judicial expression from state courts); Industrial Indemnity Company v. Continental Casualty Company, 375 F.2d 183 (10th Cir. 1967) (no deci-

sions from Oklahoma courts which are in point or are analogous); Mitton v. Granite State Fire Ins. Co., 196 F.2d 988 (10th Cir. 1952) (the Colorado courts have not passed upon the right to interest in cases similar to the one before us and we are unwilling to overrule the considered appraisal of the Trial Judge).

Our research of the Oklahoma authorities indicates that the Trial Court's conclusion in regard to the doctrine of res ipsa loquitur was warranted. In St. John's Hospital & School of Nursing, Inc. v. Chapman, 434 P.2d 160 (Okl.1967), the Supreme Court of Oklahoma stated:

. . . the basic effect . . . of the doctrine of res ipsa loquitur is to aid the plaintiff . . . [where] direct proof of *why* the accident happened (as distinguished from *what caused the accident*) is beyond the power of the plaintiff . . . (Emphasis added).

434 P.2d 160 at 166–167.

It further cited with approval the rule that:

"An inference (of negligence under the doctrine of res ipsa loquitur) arises only from *an established foundation fact.* The inference cannot supply the foundation fact from which it arises." citing National Fire Insurance Company v. Elliott, Okl., 298 P.2d 448, *supra.* (Emphasis added).

434 P.2d 160 at 168.

■ In light of these authorities, as well as others cited by the appellee, we cannot accept Stevens' contention that the mere occurrence of this accident, or appellee's exclusive control of the aircraft prior to the crash, established the "foundation fact" (i. e., the "thing" or "instrumentality" which speaks for itself), from which an inference of negligence can be drawn under the doctrine of res ipsa loquitur. Stevens has not presented cogent evidence as to the *cause* of this accident. Under the controlling authorities we may not infer that appellee was negligent in repairing this aircraft and then, from this inference, further infer that such negligence created a defective condition in

the aircraft which was the proximate cause of the accident resulting in Robert's death. *See also,* Kelley v. Central National Bank of Richmond, 345 F.Supp. 737 (E.D.Va.1972).

In light of our determination above that Mid-Continent was entitled to an order of summary judgment against the contentions of either of Stevens' theories (i. e., negligence or res ipsa loquitur), we need not decide whether there existed material issues of fact concerning Chesley's agency relationship to Mid-Continent in his function as a certified inspector, or whether Stevens was precluded from recovery on the basis that Robert bore the final absolute responsibility to inspect the aircraft prior to test-flying it.

We affirm.