**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 22 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILEY CHESTAND,

    Plaintiff-Appellant,

v.

MEDICAL TECHNOLOGY AND
RESEARCH AUTHORITY,

    Defendant-Appellee.

No. 98-6464
and
No. 99-6061
(D.C. No. 97-CIV-1721-R)
(Western District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, Circuit Judge, **BRISCOE**, Circuit Judge, and **McWILLIAMS**, Senior
Circuit Judge.

---

    Although we are unable to find the complaint in the record before us, it would

appear that Wiley Chestand ("Chestand") brought suit in the United States District Court

for the Western District of Oklahoma against Medical Technology and Research

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Authority ("MTRA")[1] alleging that MTRA had unlawfully terminated his employment with MTRA as parking assistant because of his race (Chestand is African-American) in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-1, *et seq.*[2] It would also appear that in addition to his Title VII claim, Chestand asserted two supplemental state claims pursuant to 28 U.S.C. § 1367(a). After discovery, MTRA filed a motion for summary judgment as to Chestand's Title VII claim, asserting that there was no genuine issue of material fact. Chestand filed an objection to MTRA's motion, with a supporting brief, to which MTRA filed a reply.

After a hearing, the district court granted MTRA's motion for summary judgment on Chestand's Title VII claim, holding, *inter alia,* that Chestand had failed to present sufficient evidence to support an inference of race discrimination. Then, having granted summary judgment to MTRA in Chestand's Title VII claim, the district court declined to exercise supplemental jurisdiction over Chestand's state claims and dismissed those claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Chestand appeals the judgment entered. (Our Appeal No. 98-6464.)

MTRA thereafter filed with the district court an application for an award of

---

[1] MTRA is a state agency created to handle parking and security at the Oklahoma Health Science Center Complex.

[2] Chestand had timely filed a charge with the Equal Employment Opportunity Commission alleging that his termination was motivated by racial bias. After investigation, the EEOC stated that it was "unable to conclude that the information obtained established violations of the statutes."

attorney's fees. Chestand filed objections thereto. On December 21, 1998, the district court granted, in part, MTRA's request for attorney's fees and awarded it $2500.00 in attorney's fees to be paid by Chestand at the rate of $25.00 per week. Chestand appeals the district court's award of attorney's fees. (Our Appeal No. 99-6061.)[3]

No. 98-6464

Although the complaint and MTRA's answer thereto are not in the record before us, MTRA's motion to dismiss and for summary judgment and its supporting brief, Chestand's response and his supporting brief, and MTRA's reply thereto are in MTRA's supplemental appendix. From those pleadings we learn that Chestand was hired by MTRA on September 26, 1995 to serve as an account clerk or accounting assistant. Toward the end of 1996, Chestand was advised by his supervisor that his accounting skills were deficient and he was then offered the position of parking assistant with MTRA which he accepted on December 16, 1996, in lieu of termination. Over the next six months Chestand had recurring "problems" with his supervisor, Coyette Wright, also African-American, which culminated in Chestand's discharge from his position as a parking assistant on or about June 6, 1997.[4]

---

[3]Although the two appeals were separately briefed, we will treat both appeals in this opinion. Oral argument was held in No. 98-6464 on January 21, 2000. In No. 99-6061 oral argument was waived by both parties.

[4]In the district court Chestand did not pursue his demotion from account clerk to parking assistant, but did challenge his discharge from the position of parking assistant, which he claims was the result of racial discrimination and in violation of Title VII.

In the district court, both parties agreed that, under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), in order for Chestand to make a *prima facie* case of race discrimination, he must show (1) that he is a member of a protected class, (2) that he was qualified for the position of parking assistant, and (3) that he was discharged "under circumstances giving rise to an inference of unlawful discrimination." *Id.* at 802. In the district court the only issue was whether Chestand had shown, *prima facie*, that his discharge was "under circumstances giving rise to an inference of unlawful discrimination," since Chestand was African-American and MTRA conceded that he was "qualified" as a parking assistant. In support of his argument that he had shown at least an inference of unlawful discrimination, Chestand relied on alleged instances of "disparate treatment," i.e., white employees who were guilty of insubordination and rudeness but were not discharged, racial epithets uttered by white fellow employees, and the like.

In granting MTRA's motion for summary judgment on Chestand's Title VII claim, the district court stated that it was doing so on the ground that Chestand had failed to make a *prima facie* showing that his discharge was racially motivated, citing *McDonnell Douglas,* 411 U.S. at 802; *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1417 (10th Cir. 1993), *aff'd*, 54 F.3d 788 (10th Cir. 1995). Hence, the district court did not reach the question of whether MTRA had articulated a legitimate business reason for the discharge, and, if so, whether Chestand had met his burden of thereafter showing that the

- 4 -

reason given by MTRA was pretextual. As concerns its ruling that Chestand had failed to make a *prima facie* showing that his discharge was racially motivated, the district court found that Chestand was a member of a protected class, i.e., he was African-American, and assumed that Chestand was qualified for the position of parking assistant, but that Chestand had failed to "present evidence to support the inference of discrimination." In so doing, the district court noted that Chestand's affidavit and his depositional testimony were contradictory concerning his disparate treatment contention. The district court also observed that much of the evidence offered by Chestand to defeat MTRA's motion for summary judgment was not based on "personal knowledge," i.e., it was hearsay.

On appeal, the case is presented to us on the same basis it was presented to the district court, namely that Chestand is a member of a protected class, that he was qualified for the position of parking assistant, that he was discharged, and the only disputed issue is whether Chestand made a sufficient showing that his discharge was "under circumstances giving rise to an inference of unlawful discrimination." Here, as in the district court, Chestand relies on alleged "disparate treatment," racial epithets in the workplace, and the like. We agree with the district court that Chestand's showing was insufficient to make a *prima facie* Title VII claim. Chestand's affidavit and his despositional testimony were contradictory. Further, much of his proffered evidentiary matter was "hearsay," and not based on personal knowledge. In this regard, in *Thomas v. International Business Machines,* 48 F.3d 478 (10th Cir. 1995) we spoke as follows:

To be sure, the nonmoving party need not produce evidence "in a *form* that would be admissible at trial," but the content or substance of the evidence must be admissible. For example, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because "[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." Furthermore, "generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." (citations omitted).

*Id.* at 485.

Subsequent to oral argument, we ordered the parties to file simultaneous supplemental briefs addressing the applicability of *Perry v. Woodward,* 199 F.3d 1126 (10th Cir. Dec. 20, 1999), which was filed subsequent to briefing in the present case. In *Perry*, we spoke as follows:

A plaintiff relying on *McDonnell Douglas* bears the initial burden of establishing a prima facie case by a preponderance of the evidence. One way a plaintiff may establish a prima facie case of wrongful termination is by showing that: (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge. (emphasis added)(citations omitted).[5]

*Id.* at 1135.

In the supplemental brief, counsel for Chestand argues that *Perry* supports his

---

[5]In *Perry*, we said that "the fourth test of the *prima facie* case is met if the discharged plaintiff can show that someone was hired to replace her." *Id.* at 1138. There is nothing in the present record to indicate that after his discharge Chestand was "replaced."

position that, based on disparate treatment and racial epithets in the work place, and the like, i.e., so-called "direct evidence," he made a sufficient showing that his discharge was made "under circumstances giving rise to an inference of unlawful discrimination." In *Perry*, we held that Perry had not established, *prima facie,* by "direct evidence," that hers was a "racially motivated discharge." However, there is no suggestion in the supplemental brief that Chestand is claiming that he has shown an "inference of discrimination" by "indirect evidence" or that he relies in any way on the four-pronged test mentioned in *Perry*.[6] And in this connection, there is nothing in the present record to show that Chestand's position as parking assistant "was not eliminated after . . . [his] discharge." Rather, it has been counsel's position throughout that Chestand made a sufficient showing by "direct evidence" of racially motivated discharge based on disparate treatment, racial epithets and hostile work place environment. We agree with the district court that Chestand's showing in this regard was insufficient.

As indicated, after granting MTRA's motion for summary judgment and

---

[6]*Perry* relied on *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170 (10th Cir. 1996), where we observed as follows:

> Lowe next challenges the grant of summary judgment on her Title VII sex discrimination claims. Lowe first contends that her termination constituted disparate treatment. To establish a prima facie case, the discharged employee must show that: (1) she belongs to the protected class; (2) she was qualified for her job; (3) that, despite her qualifications, she was discharged; and (4) that after her discharge the job remained available.

*Id.* at 1174.

dismissing Chestand's Title VII claim, the district court dismissed without prejudice Chestand's two supplemental state claims. We find no error in this regard. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966); *Sawyer v. County of Creek,* 908 F.2d 663, 668 (10th Cir. 1990).

No. 99-6061

As indicated, after entry of summary judgment in favor of MTRA, MTRA filed a motion for an award of attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), to which motion Chestand filed objections. In that motion MTRA sought an award of $16,582.00. On December 21, 1998, the district court granted, in part, MTRA's request and awarded MTRA attorney's fees in an amount of $2500.00, to be paid by Chestand at the rate of $25.00 per week. Chestand appeals such award.

An award of attorney's fees under 42 U.S.C. § 2000e-5(k) is, in the words of the statute, discretionary. Accordingly, we review an award of attorney's fees in a Title VII case under an abuse of discretion standard. *Simons v. Southwest Petro-Chem, Inc.,* 28 F.3d 1029, 1031 (10th Cir. 1994). In *Simons*, we held that a prevailing defendant in a Title VII case is not entitled to an award of attorney's fees unless the court finds that the plaintiff's claim was frivolous, unreasonable and groundless, or that the plaintiff continued to litigate after his claim clearly became frivolous. *Id* at 1033, *citing Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978). In this connection, the district court in the instant case "disagreed" with Chestand's suggestion that his claim

- 8 -

was not frivolous and the court opined that Chestand "should have realized that at the summary judgment stage he needed more than mere speculation to support his claims." In fixing the amount of the award, the district court recognized the "economic disparity of the parties," noting that Chestand at the time was a single parent supporting two minor children and was then employed full time at Tinker Field earning $11.38 per hour. *See Gibbs v. Clements Food Co.,* 949 F.2d 344, 345 (10th Cir. 1991).

Without going into further detail, we conclude that the district court did not abuse its discretion in awarding MTRA attorney's fees in the amount of $2500.00.

The judgments in No. 98-6464 and No. 99-6061 are affirmed.

Entered for the Court

Robert H. McWilliams
Senior Circuit Judge

- 9 -

**Cases No. 98-6464 and No. 99-6061**
**Chestand v. Medical Technology and Research Authority**

**EBEL, Circuit Judge, concurring:**

I join in Judge McWilliams' Order and Judgment, although if this case were treated as an indirect evidence case, I would have no disagreement with the concurrence of Judge Briscoe.

**Cases No. 98-6464 and No. 99-6061**
**Chestand v. Medical Technology and Research Authority**

**BRISCOE, Circuit Judge, concurring:**

I reach the same ultimate conclusion as the majority in affirming the district court on all issues in both appeals, but I write separately to provide a differing rationale in support of affirmance of the district court's grant of summary judgment on Chestand's Title VII claim.

This circuit's application of the McDonnell Douglas criteria in wrongful discharge cases has not been entirely consistent. Some decisions faithfully acknowledge McDonnell Douglas's four-part test, holding that a plaintiff may establish a prima facie case by showing that (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge. See, e.g., Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999), cert. denied, No. 99-1527, 2000 WL 28741 (U.S. May 15, 2000); Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174-75 (10th Cir. 1996); Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1038 (10th Cir. 1993); Trujillo v. Grand Junction Reg'l Ctr., 928 F.2d 973, 976-77 (10th Cir. 1991). Other decisions, however, suggest that a plaintiff must make a different threshold showing. For example, Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410 (10th Cir. 1993) ("Nannie and the Newborns") holds that a prima facie case entails proof that the plaintiff (1) belongs to a protected class; (2) was "qualified and satisfactorily performing" his job; and (3) was

"terminated under circumstances giving rise to an inference of discrimination."

Id. at 1416-17.[1]  Contrary to established Supreme Court precedent, the third prong of the Nannie and the Newborns test seems to imply that a district court should evaluate all evidence that might support an inference of discrimination during the first stage of the McDonnell Douglas analysis.

Reasonably relying on our decision in Nannie and the Newborns, the district court performed just such an evaluation in this case.  The court noted that Chestand clearly was a member of a racial minority, assumed that Chestand was qualified for his position, and proceeded directly to the third prong of the Nannie and the Newborns test.  The court then considered Chestand's numerous allegations that MTRA treated white employees more favorably than black employees.  The court emphasized that the only evidence submitted to substantiate these allegations, an affidavit signed by Chestand himself, was

---

[1] In support of this three-part test, Nannie and the Newborns relies on two other decisions from this circuit.  One of these cases, McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1260 (10th Cir. 1988), requires the following proof to establish a prima facie case when an employer alleges that the plaintiff violated a company "work rule": (1) the plaintiff is a member of a protected class; (2) the plaintiff was discharged for violating a work rule; and (3) similarly situated non-minority employees were treated differently.  Id. at 1260; accord Aramburu v. Boeing Co., 112 F.3d 1398, 1403 (10th Cir. 1997); Elmore v. Capstan, Inc., 58 F.3d 525, 529-30 (10th Cir. 1995); EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992).  The other case cited in Nannie and the Newborns applies a variant of this test.  See Allen v. Denver Public School Board, 928 F.2d 978, 985-86 (10th Cir. 1991) (holding that a plaintiff can establish a prima facie case of wrongful termination by demonstrating (1) he is "a minority member;" (2) he was qualified for his position; (3) he was discharged; and (4) "[n]onminorities in the same or similar situations were not disciplined the same or similarly").

inconsistent with Chestand's deposition testimony and unsupported by personal knowledge.  As a result, the court granted MTRA's motion for summary judgment on the theory that Chestand "fail[ed] to present evidence sufficient to support a prima facie case of discrimination in that he fail[ed] to present evidence to support the inference of discrimination."  Aplt. App. at 53.

I believe we can resolve this appeal without reaching the question of whether Nannie and the Newborns correctly articulates the test for a prima facie case.  It is settled that "we may affirm a grant of summary judgment on any ground adequately supported by the record."  Z.J. Gifts D-2, L.L.C. v. City of Aurora, 136 F.3d 683, 685 (10th Cir.), cert. denied, 525 U.S. 868 (1998).  Here, a rather unique record makes it particularly appropriate to resolve this case on "pretext" grounds.  First, although MTRA focused primarily on the components of a prima facie case in its motion for summary judgment, in his response brief Chestand dedicated several pages to the argument that MTRA's explanation for his discharge was a pretext for discrimination.  MTRA, in turn, dedicated several pages of its reply brief to this topic.  Second, in his attempt to satisfy the third prong of the Nannie and the Newborns test, Chestand unwittingly presented his best case on the issue of "pretext."  Put another way, the evidence submitted by Chestand to show that the circumstances of his termination gave rise to "an inference of discrimination" is the same evidence Chestand would have submitted

if the district court had expressly ordered the parties to address the issue of "pretext."

With this evidence in mind, I join in affirming the district court's grant of summary judgment. Assuming <u>arguendo</u> that Chestand established a prima facie case, no genuine issue of material fact exists as to whether MTRA proffered a legitimate, nondiscriminatory reason for his termination. MTRA's explanation for Chestand's discharge was simple: Chestand "was discharged for continued insubordination and other performance problems about which he had been warned." Aplee Supp. App. at 42 (citations omitted). In MTRA's view, which is supported by evidence in the record, Chestand failed to perform the tasks associated with his position, was unacceptably tardy, and on more than one occasion addressed his supervisor in a rude and inappropriate manner.

Chestand contends that the circumstances surrounding his discharge belie MTRA's facially neutral explanation. In particular, Chestand asserts that (1) three white employees – Parker Cheely, C.R. White, and Mike Slutzky – were not discharged even though they committed similar acts of insubordination; (2) white employee Bill Wheeler was not discharged even though he used racial epithets; (3) white employees Janet Rickey and Joyce Hooten were the only workers who received "major" salary increases in 1996 and 1997; (4) only white employees (including Glenn Cooper, Kevin Lewis, Lester LaPorte, and John White) received

promotions, while the position of black employee James Smith was deleted; (5) the parking office, which was "the only MTRA unit that [wa]s all black," was required to "clock-in and clock-out for lunch;" (6) whites held most of the "top positions" at MTRA, and no "Vacancy Announcement" was posted before some of these positions were filled. Appellant's Brief in Chief at 9-11. Significantly, the only evidence submitted by Chestand to support these allegations is his own affidavit.

As the district court rightly recognized, Chestand's affidavit is insufficient to create a genuine issue of material fact. First, it appears that Chestand had no firsthand knowledge of any race-based decisions involving other MTRA employees. Federal Rule of Civil Procedure 56(e) provides that affidavits submitted in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Our cases similarly recognize that "generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." Thomas v. International Bus. Machines, 48 F.3d 478, 485 (10th Cir. 1995) (quoting Stevens v. Barnard, 512 F.2d 876, 879 (10th Cir. 1975)). Second, Chestand's affidavit is in some respects inconsistent with or refuted by his deposition testimony. For example, Chestand stated during his

deposition that he had no direct knowledge of the disciplinary measures that might have been imposed against Cheely, C.R. White, Wheeler, and Slutzky. Chestand also admitted during his deposition that Rickey and Hooten (the two employees who purportedly received substantial salary increases) were not parking assistants, that all employees received a pay raise in 1996, and that he did not "know for a fact" that only white employees received "major" salary increases. Aplee. Supp. App. at 101-03, 106. When an affidavit contradicts a plaintiff's deposition testimony, "the affidavit should not be considered." Bohn v. Park City Group, Inc., 94 F.3d 1457, 1463 (10th Cir. 1996); cf. Rios v. Bigler, 67 F.3d 1543, 1551 (10th Cir. 1995) ("[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue.") (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). Once this affidavit is removed from the equation, no evidence in the record casts doubt on the valid, nondiscriminatory reason given by MTRA for Chestand's discharge.