COOPER v. NEW YORK LIFE INS. CO.

No. 32023. Feb. 18, 1947.

Rehearing Denied March 25, 1947.

Second Petition for Rehearing Denied May 20, 1947.

*180 P. 2d 654.*

Villard Martin and Virgil Hicks, both of Tulsa, for plaintiff in error.

William F. Tucker and William H. Martin, both of Tulsa, for defendant in error.

ARNOLD, J. Action by Nana M. Cooper against New York Life Insurance Company. Judgment for defendant, and plaintiff appeals.

This action was commenced September 11, 1943, by plaintiff filing in the court of common pleas of Tulsa county her petition in which she sought recovery from defendant upon the double indemnity clause of a life insurance policy. The insured was the husband of plaintiff and died October 22, 1942. Plaintiff acknowledged and paid its primary liability under the policy, but denied liability under the double indemnity clause. The allegations in plaintiff's petition material to a consideration of the question here involved reads as follows:

"That the death of the insured, Conrad E. Cooper, resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means, in that, on the 27th day of September, 1942, the insured (Conrad E. Cooper) was given hypodermic injections of morphine sulphate to relieve pain brought on by an attack of renal lithiasis; that said injections were given in usual quantities, at not too frequent intervals, by proper methods and by skilled persons; that said injections resulted in acute opium poisoning which result was

unexpected, unforeseen and unusual; that said opium poisoning brought on a respiratory collapse; that artificial respiration, including the application of a pulmotor for about three hours, was resorted to, to overcome the respiratory collapse and to restore breathing; that as a result of opium poisoning, the respiratory collapse and the efforts to restore respiration, the insured contracted pneumonia on the 29th day of September, 1942, and was hospitalized in St. Johns Hospital in Tulsa, Oklahoma; that empyema in the right thorax or pleural cavity developed as a result of the pneumonia; that the insured died on October 22, 1942, from sepsis due to empyema."

The double indemnity provision of the policy reads as follows:

"The double indemnity specified on the first page hereof shall be payable upon receipt of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury; provided, however, that such indemnity shall not be payable if the insured's death resulted from self-destruction, whether sane or insane; from the taking of poison or inhaling of gas, whether voluntary or otherwise; from committing an assault or felony; from war or any act incident thereto; from engaging in riot or insurrection; from participation as a passenger or otherwise in aviation or aeronautics; or, directly or indirectly, from infirmity of mind or body, from illness or disease, or from any bacterial infection other than that occurring in consequence of accidental and external bodily injury."

The defendant demurred to plaintiff's petition upon the ground that the cause of the death of the insured was within the exception against liability contained in the double indemnity provisions of the policy. The trial court sustained the demurrer, plaintiff elected to stand on her petition, and the court entered judgment in favor of the defendant.

Plaintiff has made but one assignment of error in her petition in error and her argument thereon is presented in the brief under the following proposition:

"The death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within 90 days after such injury."

In support of the judgment of the trial court defendant asserts the negative of this proposition, except as to the time element therein stated.

Assuming, as we must on demurrer, that the facts alleged in the quoted paragraph of the petition are true, and that the inference drawn from those facts is a reasonable one, was the death of the insured accidental within the express limitations and exceptions of the double indemnity clause of the policy in suit?

Death resulted directly and proximately from sepsis, which culminated in a progressive series of systemic disturbances following usual and ordinary hypodermic injections of morphine sulphate to relieve pain. These injections were given at reasonable intervals by skilled persons and in quantities approved by medical authorities for such purpose. Morphine is the narcotic element of opium and when thus used medicinally is not ordinarily poisonous or harmful in its results. That it did have unusual, unexpected and extraordinary effects on the body and system of insured is admitted by the demurrer.

Since intent is a necessary element in the cause and effect of wrongful injury, it is difficult to follow the reasoning of some authorities which make a distinction between accidental means which cause a given result, and accidental results following upon the intentional use of the means employed. Cause and effect in human actions must be joined together by unity of intent, else both become instruments of accident, mishap or intervening factors which were unforeseen. Both contribute to the unexpected result in such instances. This court has aligned itself with those authorities which recognize the unity of intent between cause and effect except where that unity is destroyed by the in-

tervention of accident, mishap or unforeseen factors which produce unexpected results. Such intervention is deemed to be fortuitous and, in combination with cause and effect, produces an accidental result. Union Accident Co. v. Willis, 44 Okla. 578, 145 P. 812; Continental Casualty Co. v. Clark, 70 Okla. 187, 173 P. 453; Provident Life & Accident Ins. Co. v. Green, 172 Okla. 591, 46 P. 2d 372; Mid-Continent Life Ins. Co. v. Davis, 174 Okla. 262, 51 P. 2d 319; Mid-Continent Life Ins. Co. v. Dunnington, 177 Okla. 484, 60 P. 2d 1047.

We think that the facts alleged in plaintiff's petition, and which the demurrer admits, bring this case fairly within the language used by Judge Sanborn in the case of Western Commercial Travelers Ass'n v. Smith, 85 Fed. 401, to wit:

". . . an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing . . . is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

This language was largely relied on by Mr. Justice Cardozo in his dissenting opinion in the Landress Case (78 L. Ed. 934), which dissent this court followed, in the absence of a Federal question being involved, as the correct rule of state decision in the case of Provident Life & Accident Ins. Co. v. Green, supra.

In the instant case the unexpected results followed the recognized and approved use of morphine sulphate as a means of alleviating pain. There was no unity of intent joining the means used and the results which followed. An unusual and extraordinary chemical re-

action intervened which could not have been foreseen and which was wholly unexpected. The means used were applied externally, the reactions were immediately violent and, we think, the results were purely accidental and within the terms of the double indemnity provisions of the policy.

But defendant makes the further contention that this language of plaintiff's petition, to wit: "that such injections resulted in acute opium poisoning. which result was unexpected, unforeseen and unusual", brings this case within the exception from liability thus expressed in the double indemnity clause, to wit: "provided, however, that such double indemnity shall not be payable if the insured's death resulted from . . . the taking of poison . . . whether voluntary or otherwise".

This contention cannot be sustained. The language of the petition here relied on is merely an inference deduced from previously alleged and admitted facts. The fact of "taking of poison" cannot be predicated upon the admitted fact that morphine sulphate was medically administered by hypodermic injection to relieve extreme pain. "Taking of poison" is a phrase of common usage and of universally understood meaning when used to indicate a cause of death. It means the taking internally of some substance or liquid which, in small quantities, is lethal in its results. (Equitable Life Assurance Society v. Hemenover, 67 Colo. 231, 67 P. 2d 80.) The phrase does not connote an unusual and unexpected chemical reaction from the administering by a physician to a patient of a narcotic drug in cases where such treatment is approved as proper by recognized medical authorities. As thus understood the phrase, "taking of poison", in the indemnity clause of the policy is not ambiguous. If any other meaning was intended by the use of this phrase, then the language is ambiguous and must be construed most strongly against the one responsible therefor. (15 O.S. 1941 §170).

Reversed and remanded, with directions to the trial court to overrule defendant's demurrer and for further proceedings consistent herewith.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, and ARNOLD, JJ., concur. BAYLESS, WELCH, CORN, and GIBSON, JJ., dissent.