## NEW YORK LIFE INS. CO. v. COOPER et al.

No. 3588.

Circuit Court of Appeals, Tenth Circuit.

April 16, 1948.

Rehearing Denied May 10, 1948.

William H. Martin, of Tulsa, Okl. (William F. Tucker, of Tulsa, Okl., on the briefs), for appellant.

Garrett Logan, of Tulsa, Okl. (Villard Martin, Virgil Hicks, Thomas M. Finney, and Robert J. Stanton, all of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an action for a declaratory judgment.

Nana M. Cooper and Mary Cooper are the beneficiaries under a policy of life insurance issued by the New York Life Insurance Company [1] on the life of Conrad E. Cooper.[2] The insured died October 22, 1942.

The policy contained a double indemnity provision reading as follows:

"The Double Indemnity specified on the first page hereof shall be payable upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury; provided, however, that such Double Indemnity shall not

---

[1] Hereinafter called the Insurance Company.

[2] Hereinafter called the insured.

be payable if the Insured's death resulted * * * ; from the taking of poison * * *, whether voluntary or otherwise; * * * or, directly or indirectly, from infirmity of mind or body, from illness or disease, * * * other than that occurring in consequence of accidental and external bodily injury."

The double indemnity benefits were payable in monthly instalments. The relief sought was judgment for the matured instalments and an adjudication that the Insurance Company would be liable for the remaining instalments as they matured.

Paragraph 7 of the complaint alleged:

"The death of the insured Conrad E. Cooper, resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means, in that, on the 27th day of September, 1942, the insured (Conrad E. Cooper) was given hypodermic injections of morphine sulphate to relieve pain brought on by an attack of renal lithiasis; that said injections were given in usual quantities, at not too frequent intervals, by proper methods and by skilled persons; that said injections resulted in acute opium poisoning which result was unexpected, unforeseen and unusual; that said opium poisoning brought on a respiratory collapse; that artificial respiration including the application of a pulmotor for about three hours, was resorted to, to overcome the respiratory collapse and to restore breathing; that as a result of opium poisoning, the respiratory collapse and the efforts to restore respiration, the insured·contracted pneumonia on the 29th day of·September, 1942, and was hospitalized in St. Johns Hospital in Tulsa, Oklahoma; that empyema ·in the right thorax or pleural cavity developed as a result of the pneumonia; that the insured died on October 22, 1942, from sepsis due to empyema."

A prior suit had been brought by Nana M. Cooper against the Insurance Company in the Court of Common Pleas of Tulsa County, Oklahoma, to recover the instalments under the double indemnity provision from October, 1942, to August, 1943, inclusive. The court sustained a demurrer to the petition in that action. Paragraph 4 of the petition in that action was identical with paragraph 7 in the instant action. On appeal, the Supreme Court of Oklahoma reversed.[3] It held that, under the facts alleged, the means used were external, the

---

[3] See Cooper v. New York Life Ins. Co., 198 Okl. 611, 180 P.2d 654, 655.

In the opinion the court said:

"Death resulted directly and proximately from sepsis, which culminated in a progressive series of systemic disturbances following usual and ordinary hypodermic injections of morphine sulphate to relieve pain. These injections were given at reasonable intervals by skilled persons and in quantities approved by medical authorities for such purpose. Morphine is the narcotic element of opium and when thus used medicinally is not ordinarily poisonous or harmful in its results. That it did have unusual, unexpected and extraordinary effects on the body and system of insured is admitted by the demurrer * * *

"In the instant case the unexpected results followed the recognized and approved use of morphine sulphate as a means of alleviating pain. There was no unity of intent joining the means used and the results which followed. An unusual and extraordinary chemical reaction intervened which could not have been foreseen and which was wholly unexpected. The means used were applied externally, the reactions were immediately violent and, we think, the results were purely accidental and within the terms of the double indemnity provisions of the policy.

"But defendant makes the further contention that this language of plaintiff's petition, to-wit: 'that such injections resulted in acute opium poisoning, which result was unexpected, unforeseen and unusual', brings this case within the exception from liability thus expressed in the double indemnity clause, to-wit: 'provided, however, that such double indemnity shall not be payable if the insured's death resulted from * * * the taking of poison * * * whether voluntary or otherwise.'

"This contention cannot be sustained. The language of the petition here relied on is merely an inference deduced from previously alleged and admitted facts. The fact of 'taking of poison' cannot be predicated upon the admitted fact that morphine sulphate was medically administered by hypodermic injection to relieve extreme pain. 'Taking of poison' is a phrase of common usage and of universally understood meaning when used to

reactions immediate and violent, the results accidental and within the terms of the double indemnity provision, and that death did not result from the taking of poison.

After the remand, Nana M. Cooper dismissed the state court action without prejudice and she and Mary Cooper brought the instant action.

Nana M. Cooper brought another action against the Insurance Company in the United States District Court for the Northern District of Oklahoma seeking recovery upon double indemnity provisions of two insurance policies issued to the insured, substantially identical with the double indemnity provision in the policy in suit. That action resulted in a judgment in favor of Nana M. Cooper, which, on appeal, was affirmed by this court. New York Life Ins. Co. v. Cooper, 10 Cir., 158 F.2d 257. In that case, the following findings of fact, among others, were made:

"IV. The insured suffered a kidney stone attack about 2:00 A.M., September 27, 1942. He had sustained previous attacks over the preceding years, and in addition had suffered from chronic sinusitis. Shortly after 2:15 A.M., Doctor Schreck arrived at the Cooper home and found him in severe pain from the kidney stone. From the time he arrived until his departure about 4:00 A.M., the doctor administered four one-fourth grain injections of morphine sulfate at thirty minute intervals. The nurse was instructed to give further injections at three hour intervals if the patient still suffered pain. During the doctor's absence, about 8:00 A.M., the nurse began giving the insured artificial respiration to aid his labored breathing and to swab out his mouth in which quantities of mucus would accumulate due to the sinus condition. The patient was suffering intensely, and about 9:00 A.M., the nurse gave him a one-fourth grain morphine sulfate injection. At 10:00 A.M. the insured was in shock, his respiration had dropped to eight per minute and the pulse was down to forty eight. The insured then underwent a complete suspension of respiration. The doctor and a pulmotor were called and by 2:00 P.M. normal breathing and pulse rate were restored. 'The respiratory collapse was the result of the administration of the morphine sulfate.'

"V. September 29, 1942, the insured was admitted to a hospital with symptoms of pneumonia. The condition became progressively worse, and an operation was performed for the removal of the infected matter from the pleural cavity. 'The insured did not recover from the sepsis traceable to the pneumonia and died October 22, 1942. The pneumonia was the result of the respiratory collapse.'

"VI. The hypodermic injections of morphine sulfate administered to the insured in, treatment of his renal colic were in accord with the usual practice of the medical profession in cases of this character, and was not an excessive dosage. In at least one prior attack a similar amount had been given the insured with no untoward results. One of the known effects of the drug morphine is depression of the respiratory center of the patient. Used as a pain-killer and sedative, morphine slows the respiration rate as a normal consequence, but entire collapse of the respiratory center is only a bare eventuality; in rare instances a single one-fourth grain injection has caused complete respiratory suspension."

In his conclusions of law, the court stated:

"While it is true that the complete collapse of the respiratory system may follow the injection of morphine sulfate, such a result is regarded by physicians as only a remote possibility and is not to be expected."

---

indicate a cause of death. It means the taking internally of some substance or liquid which, in small quantities, is lethal in its results. Equitable Life Assurance Society of United States v. Hemenover, 100 Colo. 231, 67 P.2d 80, 110 A.L.R. 1270. The phrase does not connote an unusual and unexpected chemical reaction from the administering by a physician to a patient of a narcotic drug in cases where such treatment is approved as proper by recognized medical authorities. As thus understood the phrase 'taking of poison', in the indemnity clause of the policy is not ambiguous. If any other meaning was intended by the use of this phrase then the language is ambiguous and must be construed most strongly against the one responsible therefor. 15 O.S.1941 § 170."

That is also a finding of fact.

In its answer in the instant case, the Insurance Company denied that the death of the insured "resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means"; and alleged that the policy provided that double indemnity should not be payable if the insured's death resulted from the taking of poison, whether voluntary or otherwise, and "that the death of the insured * * * resulted from the taking of poison";

That the policy of insurance provided that double indemnity should not be payable if insured's death resulted, directly or indirectly, from infirmity of mind or body, from illness, or disease, and "that the death of the insured, * * * resulted directly or indirectly from infirmity of body, or from illness or disease";

That if the death of insured resulted from bodily injury "such bodily injury was due to means intentionally employed by the insured and those authorized to act for him";

That the external act of injecting morphine sulphate into the person of the insured was entirely free from accident and if the morphine sulphate occasioned the death of the insured, the alleged accidental effect of such morphine sulphate occurred within and not externally to the body of the insured and in concert with other causes, and that the alleged accidental effect of such morphine sulphate was not the sole cause of the death of the insured, independently of all other causes; and

That the fact the injections of morphine sulphate administered to the insured caused him to suffer a respiratory collapse was not an accident in fact; that such effect was one of the effects of occasional occurrence in the administration of morphine sulphate, fully understood by the physicians who caused the morphine sulphate to be administered and by the medical profession gen-erally, and that the medical profession fully understood and recognized the danger incident to the injection of morphine sulphate, and that its use may result in a respiratory collapse.

Nana M. Cooper filed a motion for summary judgment in which she set up the pleadings in the state court action, the judgment on the demurrer, the mandate of the Supreme Court of Oklahoma, the order spreading the mandate and overruling the demurrer, the dismissal of the action without prejudice, the pleadings in the Federal court action brought by Nana M. Cooper, and the findings of fact, conclusions of law and the judgment therein. The trial court sustained the motion for summary judgment. The Insurance Company has appealed.

■ Any right, fact, or matter in issue and directly adjudicated, or necessarily involved in the determination of an action before a competent court in which a judgment or decree has been rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the same parties and their privies, whether the claim, demand, purpose, or subject-matter of the two suits is the same or not.[4]

■ All of the factual issues raised by the answer go to the question of whether, under the facts pleaded in paragraph 7 of the complaint, the insured's death was accidental within the meaning of the double indemnity provision. Those issues were conclusively adjudicated in favor of Nana M. Cooper by the findings and judgment in the former Federal court action.

■ The policy in suit was an Oklahoma contract and the law of Oklahoma is controlling.[5] The applicable law was settled adversely to the Insurance Company by the decision of the Supreme Court of Oklahoma in Cooper v. New York Life Ins. Co., 198 Okl. 611, 180 P.2d 654.

[4] Henderson v. United States Radiator Corporation, 10 Cir., 78 F.2d 674, 675; Cressler v. Brown, 79 Okl. 170, 192 P. 417, 421; State of Oklahoma v. State of Texas, 256 U.S. 70, 85, 41 S.Ct. 420, 65 L.Ed. 831.

[5] Sindelar v. Liberty Mut. Ins. Co., 7 Cir., 161 F.2d 712, 718; Wiecking v. Phoenix Mut. Life Ins. Co., 7 Cir., 116 F.2d 90, 92; New York Life Ins. Co. v. Jackson, 304 U.S. 261, 262, 58 S.Ct. 871, 82 L.Ed. 1329; Stoner v. New York Life Ins. Co., 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284.

A motion for summary judgment should pierce the formal allegations of an answer and should be sustained, unless the existence of a genuine issue of fact be shown.[6]

We think it clear that every genuine issue of fact was conclusively adjudicated in the former Federal court action. Accordingly, the judgment is affirmed.

[6] Schreffler v. Bowles, 10 Cir., 153 F.2d 1, 3; Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469, 472, 473.