FILED
United States Court of Appeals
Tenth Circuit

September 27, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FRED FLORES,

        Plaintiff-Appellant,

v.

No. 09-6107

MONUMENTAL LIFE INSURANCE
COMPANY,

        Defendant-Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:08-CV-01067-F)**

Submitted on the briefs:[*]

Larry A. Tawwater, Darren M. Tawwater, and David N. Mayo of The Tawwater
Law Firm, P.L.L.C., Oklahoma City, Oklahoma, for Plaintiff–Appellant.

Mary Robertson and Jennifer A. Dutton of Crowe & Dunlevy, P.C., Norman,
Oklahoma, for Defendant–Appellee.

Before **LUCERO**, **McKAY**, and **O'BRIEN**, Circuit Judges.

**McKAY**, Circuit Judge.

---

[*] This case was ordered submitted on the briefs on March 5, 2010.

In this diversity case, Plaintiff Fred Flores appeals the district court's grant of summary judgment to Defendant Monumental Life Insurance Company on Plaintiff's claims of breach of contract, bad faith, and negligence *per se*.

## BACKGROUND

Plaintiff Fred Flores and his wife, Sandra Flores, had two accidental death insurance certificates issued by Defendant, one certificate effective in May 2000 and the other effective in June 2003. Both policies provided that benefits would be paid only if the "death occurr[ed] as a direct result of an Injury." (Appellant's App. at 62, 76.) "Injury" was defined as "bodily injury caused by an accident." (Appellant's App. at 61, 75.) The policies explained that "[t]he Injury must be the direct cause of the Loss and must be independent of all other causes." (Appellant's App. at 61, 75.) The policies further provided that "[t]he Injury must not be caused by or contributed to by Sickness" (Appellant's App. at 61, 75), and they included an exclusion for "Sickness or its medical or surgical treatment, including diagnosis" (Appellant's App. at 63, 77). The policies then defined "Sickness" to be "an illness or disease which results in a covered Loss while insurance for the Covered Person is in force under this Policy." (Appellant's App. at 61, 76.)

For some years before her death, Mrs. Flores took the prescription medication Verapamil to control her hypertension. In May 2006, Mrs. Flores fell while using her walker and was admitted to a hospital where she underwent

surgery on her broken arm. After staying in the hospital for approximately ten days, she was discharged and transported to a rehabilitation center. A few hours after arriving at the rehabilitation center, she died as a result of Verapamil toxicity. The state medical examiner concluded Mrs. Flores suffered from chronic hepatitis and evolving cirrhosis of the liver, but he could not determine whether Mrs. Flores's fatal Verapamil toxicity resulted from these liver problems or from an overdose of Verapamil.

Plaintiff submitted a claim to Defendant for accidental death benefits, and Defendant denied the claim. Specifically, Defendant concluded Plaintiff was not entitled to benefits because there was no evidence Mrs. Flores's death had resulted from an accidental bodily injury independent of all other causes and, moreover, her death fell within the specific exclusion for sickness or its medical or surgical treatment.

Plaintiff then filed a state court action against Defendant alleging claims of breach of contract, bad faith, and negligence *per se*. Defendant removed the action to the federal district court based on diversity jurisdiction, and the district court concluded Defendant was entitled to summary judgment on all of Plaintiff's claims. This appeal followed.

## DISCUSSION

We review the district court's summary judgment decision de novo, applying the same legal standard as the district court. *See Padhiar v. State Farm*

*Mut. Auto. Ins. Co.*, 479 F.3d 727, 732 (10th Cir. 2007). Under this standard, summary judgment is only warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The parties agree that the substantive law of Oklahoma governs our consideration of the merits of Plaintiff's claims. As a federal court sitting in diversity, our task is "simply to 'ascertain and apply'" Oklahoma law, attempting to "predict what the state's highest court would do" if faced with the specific issues before us on appeal. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) (quoting *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944)).

## I. Insurance Coverage

Under Oklahoma law, unlike many of our federal ERISA cases, an insurer's denial of benefits is entitled to no judicial deference, regardless of whether the plan administrator was given discretionary authority to deny benefits. *See Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 707 (Okla. 2002). In considering the policy language at issue in this case, we are guided by the Oklahoma Supreme Court's direction that "[t]he construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974). "The terms of the

parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). Where there is an ambiguity or conflict in the policy's terms, however, "a policy of insurance is to be construed strictly against the insurer and in favor of the insured," with the policy's language construed to mean "not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean." *Spears v. Shelter Mut. Ins. Co.*, 73 P.3d 865, 868 (Okla. 2003).

## A. Injury "independent of all other causes"

The policies' coverage language provides for benefits if death occurs as a direct result of an injury. The policies explain that an injury is a "bodily injury caused by an accident" and that "[t]he injury must be the direct cause of the Loss and must be independent of all other causes."[1] (Appellant's App. at 61, 75.) "Loss" is defined as "the death of the Covered Person or any physical impairment, incurred expense, or other benefit covered under the terms of this Policy and any attached Riders." (Appellant's App. at 61, 75.) Although the

---

[1] The policies' definition of "injury" also provides that it "must not be caused by or contributed to by Sickness." (Appellant's App. at 61, 75.) In this section of our opinion, we address only the question whether the alleged injury was independent of all other causes, leaving for separate consideration both this definitional sentence and the policies' explicit sickness exclusion.

policies do not define the word "accident," the Oklahoma Supreme Court has held that this term is an unambiguous word describing "an event that is 'unexpected, unintended and unforeseen in the eyes of the insured.'" *Cranfill*, 49 P.3d 703 at 706 (quoting *Willard v. Kelley*, 803 P.2d 1124, 1128-29 (Okla. 1990)).

The district court agreed with Defendant that Plaintiff's claim for insurance benefits did not come within the coverage language of his policies because Mrs. Flores's death was not independent of all other causes. Specifically, the court concluded that "Mrs. Flores's high blood pressure and her treatment for that condition were at least contributing causes (or a contributing cause) of her death" because she would not have died from an overdose if Verapamil had not been prescribed for her. (Appellant's App. at 407.) The court therefore concluded Mrs. Flores's death was not caused by an accidental bodily injury that acted independently of all other causes as required by the policy's definition of "injury." Defendant argues we should affirm this result on appeal, citing for support to several Oklahoma cases in which a pre-existing medical condition concurred with an accident in bringing about death.

We agree Mrs. Flores's fall was not an injury that resulted in death independently of all other causes, and we therefore agree her fall cannot be an injury triggering coverage under the policies. As to the alleged accidental overdose, however, we disagree with Defendant's interpretation of Oklahoma law. Setting aside for the moment the question whether Mrs. Flores's death was caused

-6-

by an overdose or by Verapamil accumulation resulting from her liver problems, we conclude an accidental overdose of prescription medication would constitute an injury under Plaintiff's insurance policies with Defendant.

Defendant argues the alleged accidental overdose in this case did not independently cause Mrs. Flores's death because the overdose that caused the death was in turn caused by the treatment of Mrs. Flores's hypertension with Verapamil. In other words, because the accidental injury that led to Mrs. Flores's death had its own cause, it cannot be considered an injury independent of all other causes. We conclude, however, that it would be absurd to read the policies to bar coverage whenever any cause can be identified for the accidental injury that caused the death, where this cause of a cause did not otherwise contribute to the death. The policies provide that an accidental injury, to be covered, must be independent of all other causes. This does not mean, however, that the injury must have occurred in a vacuum with nothing contributing to bring it about, but rather, the accidental injury itself must be the sole proximate cause of the death. "As Bacon says, if it were infinite with the law to consider causes that would lead us back to the birth of a person, for if he had never been born the accident would not have happened." *U.S. Fid. & Guar. Co. v. Smith*, 164 So. 2d 462, 470 (Miss. 1964) (internal quotation marks omitted). Thus, "courts have long rejected attempts to preclude recovery on the basis that the accident would not have happened but for the insured's illness." *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d

818, 831 (10th Cir. 2008) (collecting cases). Of course, as Defendant points out, the question in this case is one of Oklahoma law, not of the other jurisdictions to have considered the question. However, Oklahoma's case law is fully consonant with this interpretation of the pertinent policy language.

In all of the cases cited by Defendant for support, the death or other loss was caused by the concurrence of both a pre-existing medical condition and an unrelated accident. In *Hume v. Standard Life & Accident Insurance Co.*, 365 P.2d 387 (Okla. 1961), for instance, the insured died after an automobile accident hastened the bursting of a pre-existing aneurysm. Similarly, in *Bewley v. American Home Assurance Co.*, 450 F.2d 1079 (10th Cir. 1971) (applying Oklahoma law), the insured died as a result of the concurrence of a pre-existing heart condition and a fall. Thus, in these cases death resulted "because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident," with both the disease and the accident acting as concurring causes of the death. *Kerns v. Aetna Life Ins. Co.*, 291 F. 289, 292 (8th Cir. 1923) (cited with approval in *Hume*, 365 P.2d at 390).

By contrast, where a pre-existing disease only contributed to death insofar as it placed the insured in a position where an unanticipated and unintended occurrence might happen, the Oklahoma Supreme Court has found coverage under the terms of similar accidental insurance policies. In *Cooper v. New York Life Insurance Co.*, 180 P.2d 654 (Okla. 1947), the insured was given morphine

injections "to relieve pain brought on by an attack of renal lithiasis." *Id.* at 655.

These injections resulted in opium poisoning and ultimately led to the insured's

death. *Id.* Although the insurance policy required "proof that the death of the

insured resulted directly and independently of all other causes from bodily injury

effected solely through external, violent and accidental means," the Oklahoma

Supreme Court held the death was within the terms of this policy. *Id.* at 655-56.

In other words, as the Oklahoma Supreme Court stated in a somewhat different

context in another insurance case, the fact that an insured's pre-existing disease

causes her to voluntarily seek medical treatment and "thus put herself in a

position to be exposed to the unexpected happening does not mitigate against

recovery." *Bosley v. Prudential Ins. Co. of Am.*, 135 P.2d 479, 481 (Okla. 1943).

As Plaintiff points out, the facts in *Cooper* are quite similar to the alleged

facts in the instant situation—the insured suffered from a pre-existing medical

problem for which the insured sought treatment, and that treatment accidentally

caused the insured's death. The pre-existing medical problem in both cases did

not otherwise contribute to or cause the death, but simply exposed the insured to

the risk that an accident might occur during the course of medical treatment.

And, under these circumstances, the Oklahoma Supreme Court concluded

coverage was warranted in *Cooper*, despite the insurance policy's requirement

that the death result directly from injury independent of all other causes.

Defendant contends that *Cooper* has been implicitly overruled by other

Oklahoma cases such as *Hume*. In none of these other cases, however, was the Oklahoma Supreme Court considering a situation in which a pre-existing medical condition merely places the insured in a position where a medical accident may occur but does not otherwise contribute to the death. Indeed, Defendant has cited to no Oklahoma case in which a cause of a cause has been held to bar coverage under similar policy terms to the ones at issue here. We see no basis for departing from the distinction in Oklahoma law between cases where disease concurs with an accident in bringing about a loss, as in *Hume*, and cases where the disease simply exposes the insured to the risk that an unexpected injury may happen, as in *Cooper*. We therefore conclude that, under Oklahoma law, an accidental prescription drug overdose that is the sole proximate cause of a insured's death is an injury independent of all other causes.

Defendant also contends Plaintiff is not entitled to coverage because he is alleging medical malpractice, which cannot constitute an accident under an accidental insurance policy. For support, Defendant cites to a single Seventh Circuit ERISA case, *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1054 (7th Cir. 1991). However, among the courts that have considered the issue, "[d]eath from overdose, absent affirmative evidence that the insured intended death, is almost invariably treated as accidental." *Hardy v. Beneficial Life Ins. Co.*, 787 P.2d 1, 3 (Utah Ct. App. 1990) (collecting cases). Moreover, the reasoning in *Senkier* does not accord with the Oklahoma Supreme Court's

-10-

decision in *Cooper* and *Bosley* to permit recovery for losses incurred in the course of medical treatment. We therefore see no basis under Oklahoma law for concluding that an accidental drug overdose does not constitute an accident simply because it occurs in the course of medical treatment.

In addressing this issue, we have thus far assumed Mrs. Flores's Verapamil toxicity was caused by an overdose. However, as Defendant points out, the medical examiner did not know whether Mrs. Flores's death was caused because she was given more Verapamil than prescribed or whether she received the prescribed amount but was unable to process it because of her pre-existing liver disease.[2] Under the latter scenario, Mrs. Flores's death would not have been caused by an accidental bodily injury independent of all other causes, and therefore Plaintiff would not be entitled to insurance benefits under the terms of the policies. Defendant contends that the lack of specific evidence on the exact cause of death bars coverage under the policies. In reply, Plaintiff argues that the

---

[2] The medical examiner also indicated he could not tell whether the overdose, if one occurred, was accidental or intentional. However, the lack of evidence on this point does not bar coverage. If another person intentionally gave Mrs. Flores an overdose of Verapamil without her knowledge, the injury would still be considered accidental for insurance purposes because it was "unexpected, unintended, and unforeseen *in the eyes of the insured*." *Willard*, 803 P.2d at 1128-29. As for any suggestion that Mrs. Flores herself intentionally took more than the prescribed amount of Verapamil, Defendant has pointed to no evidence supporting such an inference, and under these circumstances the means of death is presumed to be accidental, not voluntary. *See Prudential Ins. Co. of Am. v. Tidwell*, 21 P.2d 28, 32 (Okla. 1933).

-11-

facts and the reasonable inferences to be drawn therefrom support the conclusion that Mrs. Flores's death was caused by an overdose, not her liver problems. According to the undisputed facts, Mrs. Flores "had been taking Verapamil as treatment for [her high blood pressure] for a long time prior to her death" (Appellant's App. at 35), and she apparently showed no ill effects from this medication during the years prior to her hospitalization. Based on these facts, Plaintiff argues, a jury could reasonably infer that Mrs. Flores received a fatal overdose of Verapamil while hospitalized, rather than she "just happened to attain toxic levels of the drug while she was under the care, control, and supervision of the health care providers at the hospital." (Appellant's Reply Br. at 4.)

Defendant contends that Plaintiff's theory relies entirely on speculation. However, the medical examiner's report and affidavit indicated there were only two possible causes of death, neither of which he identified to be more likely than the other. Thus, this is not a situation "complicated by a multitude of other competing inferences, the existence of which would diminish the probability of the injury's having been sustained in the manner the plaintiff['s] theory suggests." *Wratchford v. S.J. Groves & Sons Co.*, 405 F.2d 1061, 1066 (4th Cir. 1969). And, given the evidence of Mrs. Flores's long-term use of Verapamil with no ill effects, we agree with Plaintiff that a jury might reasonably conclude the inference of an overdose was more probable than the inference that Mrs. Flores's pre-existing liver disease suddenly and coincidentally caused her death during her

-12-

hospital stay. Of course, at trial Defendant might be able to point the jury to other evidence supporting the opposite conclusion. However, where the evidence indicates only two possible causes for an injury, either one of which is supported by permissible but competing inferences, we agree with the Fourth Circuit that the question should be submitted to the jury for resolution, rather than being decided on summary judgment. *See id.* at 1067; *see also Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984) ("[W]here different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment.").

We therefore conclude the district court erred in holding that Plaintiff was not entitled to coverage based on the policies' requirement that a covered injury be "independent of all other causes."

## B. The sickness exclusion

Defendant argues we can alternatively affirm the district court's decision based on the policies' sickness exclusion. The policies provide that an injury, to be covered, "must not be caused by or contributed to by Sickness." (Appellant's App. at 61, 75.) The policies also explain in the exclusions section that Defendant "will not pay a benefit for a Loss which is caused by, results from, or [is] contributed to by . . . Sickness or its medical or surgical treatment, including diagnosis." (Appellant's App. at 63, 77.) Defendant argues we should apply these provisions to bar coverage for Plaintiff.

However, in defining the term "Sickness," the policies explain that "Sickness means an illness or disease which results in a *covered* Loss." (Appellant's App. at 61, 76 (emphasis added).) Defendant contends that the word "covered" before "Loss" means simply that a loss must involve a covered person. However, "Loss" is itself defined as "the death of the Covered Person," (Appellant's App. at 61, 75), and thus Defendant's interpretation would render meaningless the word "covered" in the sickness definition. We are also not persuaded that a reasonable person in the position of the insured would understand the phrase "covered loss" to mean anything other than a loss that would be covered under the insurance policies. We accordingly conclude that a reasonably prudent layperson could interpret the sickness definition to extend coverage to losses resulting from an illness or disease, despite other language in the policy suggesting a contrary result. *See Yaffe Cos. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1189 (10th Cir. 2007) ("Oklahoma law imposes coverage when 'an insured could reasonably have expected coverage' based on the policy language, and to a reasonable person looking only at this language, the phrase 'excess of the other insurance' could well mean 'to the extent that the other insurance is not required to pay (even if the other insurance applies to the loss).'" (citation omitted)).

This situation is thus directly analogous to the recent Oklahoma case of *Andres v. Okla. Farm Bureau Mutual Insurance Co.*, 227 P.3d 1102 (Okla. Civ.

App. 2009). In that case, an Oklahoma appellate court concluded that a "reasonable person in the position of the insured" would have understood one provision in the policy to cover certain damages and another provision to exclude such coverage. *Id.* at 1106. The court stated: "Because the policy contained these conflicting provisions, it is ambiguous. Accordingly, we construe this ambiguity against [the insurer] and in favor of Plaintiffs, and we conclude that the policy provided Plaintiffs coverage for damages caused by the overflow of raw sewage into their home." *Id.* Similarly, the policy in this case contains contradictory provisions, one of which would reasonably be understood to extend coverage to losses caused by sickness, while two other provisions would reasonably be understood to exclude such coverage. Because reasonable persons could differ as to how to reconcile these contradictory provisions, the policy is reasonably susceptible to more than one construction and is therefore ambiguous. *See id.*; *see also Haworth v. Jantzen*, 172 P.3d 193, 196-97 (Okla. 2006) (holding that insurance provisions excluding "damage arising out of the use of land motor vehicles subject to registration" and "damage arising out of the use of land motor vehicles if the injury or damage occurs away from the insured premises" were ambiguous because together they could be read in four different ways). Under longstanding Oklahoma law, "in the event of ambiguity or conflict in the policy provisions, a policy of insurance is to be construed strictly against the insurer and in favor of the insured." *Spears*, 73 P.3d at 868. We thus construe the policies to

cover losses that result from sickness and hold that the sickness exclusion did not

bar coverage for Plaintiff's insurance claim.

## II.  Plaintiff's Claims

Having held that Plaintiff may be able to establish at trial that he is entitled

to coverage under his policies with Defendant, we now turn to the question

whether the court erred in denying Plaintiff's specific claims for relief.  In his

complaint, Plaintiff raised claims of breach of contract, bad faith, and negligence

*per se*, and the district court granted summary judgment to Defendant on all of

these claims.  We consider each in turn.

## A.  Breach of contract

The district court held Defendant was entitled to summary judgment based

on its conclusion that no benefits were due under the policies.  We conclude

Plaintiff may be entitled to benefits, and we therefore reverse the district court's

grant of summary judgment on this claim.

## B.  Bad faith

The core of a bad-faith claim "is the insurer's unreasonable, bad-faith

conduct, including the unjustified withholding of payment due under a policy."

*McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

> The bad-faith action may also be based upon an insurer's failure to
> perform an act that is derivative or secondary in nature; that is, an
> insurer's duty that owes its existence to a preexisting implied
> contractual, or statutory, or status-based duty arising from the
> insurer-insured relationship.  For example, a duty to *timely* and

*properly* investigate an insurance claim is intrinsic to an insurer's contractual duty to *timely* pay a valid claim. Similarly, bad-faith actions have been based upon an insurer's failure to follow judicial construction of insurance contracts or available applicable law, as well as upon duties that are necessary for an insurer's timely determination of a claim.

*Brown v. Patel*, 157 P.3d 117, 122 (Okla. 2007). However, "[u]ntil the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1437 (10th Cir. 1993) (applying Oklahoma law).

Plaintiff contends that, because Oklahoma law requires insurance companies to have and implement "reasonable standards for prompt investigations of claims arising" under their policies, Okla. Stat. Ann. tit. 36, § 1250.5(3), Defendant acted in bad faith when it (1) failed to adopt written guidelines or claims manuals for its adjusters to follow, (2) failed to train its employees on the specifics of Oklahoma insurance law, and (3) failed to independently investigate Plaintiff's insurance claim. As for Plaintiff's first two allegations of bad faith, we are not persuaded an insurer acts in bad faith under Oklahoma law by simply failing to adopt written standards or provide state-specific training to its employees. We see no basis in the record for a finding of bad faith with respect to Defendant's general handling of claims and training of employees. As for Plaintiff's third bad-faith allegation, there is no evidence in the record to support

-17-

a claim that Defendant's investigation was incomplete or biased in any way. *See Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 345 (10th Cir. 1995) (holding that under Oklahoma law "a bad faith claim . . . premised on inadequate investigation" must be supported by "a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information").

Plaintiff further argues Defendant acted in bad faith when it denied coverage under its policies. However, although we conclude in this opinion that Plaintiff may be entitled to coverage, we are not persuaded this resolution was so obvious and inevitable that Defendant acted unreasonably in denying Plaintiff's claims. "Where the [bad faith] tort claim is factually based on a coverage dispute as to which no controlling legal authority provides an indisputable resolution, a determination of the coverage dispute is unnecessary because the elements of unreasonableness and bad faith are not present as a matter of law." *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 n.40 (Okla. 2009).

Finally, Plaintiff argues that his bad-faith claim is supported by evidence that the claims adjuster who handled his claim asked the legal department whether a denial of coverage was "defensible," as well as evidence that the legal department replied they could probably meet their "burden to prove sickness or its treatment contributed to death." (Appellant's App. at 343.) We are not persuaded, however, that this language is sufficient to demonstrate bad faith in a

case involving a legitimate coverage dispute.  *See Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984).

Because we conclude the evidence in the record does not support a finding of bad faith under Oklahoma law, we affirm the district court's grant of summary judgment to Defendant on the issue of bad faith.

## C.  Negligence *per se*

Under Oklahoma law, "[t]he violation of an ordinance is to be deemed negligence *per se* if the injury complained of (a) was caused by the ordinance's violation, (b) was of the type intended to be prevented by the ordinance and (c) the injured party was one of the class meant to be protected by the ordinance." *Boyles v. Okla. Natural Gas Co.*, 619 P.2d 613, 618 (Okla. 1980).  Plaintiff argues that he stated a valid negligence *per se* claim based on Defendant's violation of two Oklahoma statutes:  (1) Oklahoma Administrative Code § 365:10-5-6, which requires that warning language be put at the beginning of accident-only policies; and (2) Oklahoma Statutes Annotated title 36, § 1250.5(3), which requires an insurer to adopt and implement reasonable standards for claims investigations.  As for the first statute, we agree with the district court that there is no evidence showing that Defendant's alleged violation of this statute caused the injuries alleged by Plaintiff.  As for the second statute, we see no evidence in the record that Defendant violated this statute.  We therefore affirm the district court's grant of summary judgment to Defendant on Plaintiff's negligence *per se*

-19-

claim.

## CONCLUSION

For the foregoing reasons, we **REVERSE** and **REMAND** Plaintiff's breach of contract claim for further proceedings consistent with this opinion. We **AFFIRM** the district court's grant of summary judgment to Defendant on Plaintiff's bad-faith and negligence *per se* claims.